******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* WAYNE A. KING
## (AC 42764)

Bright, C. J., and Lavine and Alexander, Js.*

*Syllabus*

Convicted of operating a motor vehicle while under the influence of intox-
icating liquor or drugs, and of previously having been convicted of
operating a motor vehicle while under the influence of intoxicating
liquor or drugs, and sentenced pursuant to the statute (§ 14-227a (g))
that imposes enhanced penalties on a third time offender, the defendant
appealed to this court. Specifically, he claimed that the trial court should
not have sentenced him as a third time offender because the essential
elements of the crime of driving while under the influence are not
substantially the same in Connecticut and Florida, where he was con-
victed in 2000 and 2006. *Held:*

1. The defendant cannot prevail on his claim that prior convictions under
   Florida's statute for driving while under the influence did not qualify
   as prior convictions for the same offense under § 14-227a (a) and, there-
   fore, he was entitled to be resentenced as a first time offender:

   a. Contrary to the defendant's claim, the trial court's application of the
   current revision of § 14-227a to the defendant's conduct, rather than the
   revision that was in existence at the time of his Florida convictions, did
   not violate the ex post facto clause; the court's application of the current
   revision did not enhance the defendant's punishment for his prior Florida
   convictions and did not punish him for conduct that was not criminal
   in Connecticut at the time he committed the Florida offenses; instead,
   the court, applying the statute as the legislature intended, merely
   enhanced his sentence for his current illegal conduct because it was
   considered more serious in light of his earlier offenses in Florida; more-
   over, on the basis of the statute's clear and unambiguous language, as
   well as precedent from this court, our Supreme Court, and the United
   States Supreme Court, the legislature intended that the applicable revi-
   sion of § 14-227a was the one under which the defendant was charged
   in this case.

   b. The "operation" element in § 14-227a was substantially the same as
   the "actual physical control" element in the Florida statute; the elements
   of each statute need not be identical to be substantially similar, and, in
   examining the manner in which Florida courts have applied the actual
   physical control element and the manner in which Connecticut courts
   have applied the operation element, it was clear that both statutes crimi-
   nalize substantially the same conduct.

   c. Contrary to the defendant's claim, neither § 14-227a (a) nor the Florida
   statute requires a vehicle to be motorized, and, accordingly, the statutes
   are substantially the same in their definitions of "vehicle" and "motor
   vehicle" for purposes of both statutes.

   d. Contrary to the defendant's claim that the Florida statute and § 14-
   227a are dissimilar because at the time of his wrongful conduct in Florida,
   § 14-227a (a) required operation in specific proscribed areas, but the
   Florida statute did not, § 14-227a (g) directs a comparison of a prior
   conviction with the current revision of § 14a-227 (a) (1) or (2), and,
   pursuant to the revision of § 14-227a under which the defendant was
   charged for his 2016 conduct, there was no requirement that he operate
   his vehicle on a public highway or another similar road, as the public
   highway element of § 14-227a (a) was eliminated by the legislature in
   2006.

   e. The defendant's claim that the statutes are dissimilar because at the
   time of his 2000 conviction in Florida, § 14-227a (a) required a blood
   alcohol content of at least 0.10 percent, but the Florida statute required
   only a blood alcohol content of 0.08 percent, was without merit; as an
   enhancement penalty for a repeat offender penalizes only the last offense
   committed by a defendant, and, when the defendant was charged in the
   present case for his Connecticut conduct, § 14-227a (a) applied to a
   blood alcohol content of 0.08 percent or higher, the 0.10 percent element

of § 14-227a (a) having been lowered to 0.08 percent by the legislature in 2002.

2. This court, as an intermediate court of appeal, was unable to overrule, reevaluate, or reexamine controlling precedent of our Supreme Court and, accordingly, declined the defendant's request to overrule *State* v. *Burns* (236 Conn. 18) and *State* v. *Mattioli* (210 Conn. 573) on the basis that they contravene the plain language of § 14-227 (g).

Argued November 18, 2020—officially released April 20, 2021

*Procedural History*

Substitute two part information charging the defendant, in the first part, with the crimes of operating a motor vehicle under the influence of intoxicating liquor or drugs and operating a motor vehicle while having an elevated blood alcohol content, and, in the second part, with previously having been convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs, brought to the Superior Court in the judicial district of Waterbury, geographical area number four, where the first part of the information was tried to the jury before *Crawford, J.*; verdict of guilty; thereafter, the defendant was tried to the court, *Crawford, J.*, on the second part of the information; judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Joshua R. Goodbaum*, for the appellant (defendant).

*Tanya K. Gaul*, special deputy assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *LeeAnn S. Neal*, assistant state's attorney, for the appellee (state).

BRIGHT, C. J. The defendant, Wayne A. King, appeals from the judgment of conviction, rendered by the trial court following a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) (1) and (2).[1] The defendant claims that (1) the court should not have sentenced him as a third time offender because the essential elements of driving under the influence are not substantially the same in Florida and Connecticut, and (2) *State* v. *Burns*, 236 Conn. 18, 670 A.2d 851 (1996), and *State* v. *Mattioli,* 210 Conn. 573, 556 A.2d 584 (1989), should be overruled because those cases contravene the plain language of § 14-227a (g), which requires that a defendant's prior convictions, on which the enhanced penalty relies, occur less than ten years before the current Connecticut conviction. We disagree with the defendant's first claim, and we, as an intermediary appellate court, are unable to overrule the decisions of our Supreme Court and, therefore, reject the defendant's second claim.[2] Accordingly, we affirm the judgment of the trial court.

The following facts, as reasonably found by the jury, and relevant procedural history inform our review of the defendant's claims. On April 1, 2016, the Naugatuck police pulled over the defendant's vehicle. The defendant smelled of alcohol, so the police transported him to the police station where the defendant agreed to take a Breathalyzer test. The defendant's blood alcohol content registered at 0.1801 percent and then at 0.1785 percent, both of which were above the legal limit. The defendant thereafter was charged with a violation of § 14-227a (a) (1) and (2). Following a guilty verdict returned by the jury, the state proceeded on a part B information, which the defendant elected to have tried to the court, charging the defendant with being a third time offender, pursuant to § 14-227a (g), on the basis of two prior convictions in the state of Florida.[3] Despite the defendant's objections on various grounds,[4] the court found that the state had established, beyond a reasonable doubt, that the defendant twice had been convicted of driving under the influence in Florida and that the essential elements of the Florida statute; see Fla. Stat. Ann. § 316.193 (West Supp. 2020);[5] were substantially the same as the essential elements of § 14-227a (a). Accordingly, the court sentenced the defendant to three years of imprisonment, execution suspended after eighteen months, twelve months of which is mandatory, followed by three years of probation. This appeal followed.

I

The defendant claims that his convictions under Fla. Stat. Ann. § 316.193, "upon which [his] conviction as a third time offender is predicated, [do] not satisfy" the

requirements of § 14-227a (g) (3), which mandates that the out-of-state convictions of driving under the influence, on which the state relies in its part B information, contain "substantially the same" essential elements as § 14-227a (a). He argues that Fla. Stat. Ann. § 316.193 "criminalizes vast amounts of conduct that either are not illegal in Connecticut now or were not illegal in Connecticut at the time of [his] Florida arrests. Put another way, what qualifies as a crime in Florida often does not in Connecticut. On that basis, convictions under [Fla. Stat. Ann. § 316.193] do not qualify as prior convictions under [§ 14-227a (g)] because the essential elements of the respective crimes are not substantially the same."

More specifically, the defendant argues that the statutes are dissimilar in the following ways: (1) § 14-227a (a) requires operation, but Fla. Stat. Ann. § 316.193 does not require operation; (2) § 14-227a (a) requires the vehicle to be a "motor vehicle," but Fla. Stat. Ann. § 316.193 does not require the vehicle to be motorized; (3) at the time of the defendant's June 23, 1999, and May 16, 2005 "wrongful conduct" in Florida, which resulted in convictions on March 14, 2000, and October 25, 2006, respectively, § 14-227a (a) required operation in specified proscribed areas, but Fla. Stat. Ann. § 316.193 did not proscribe specific areas; and (4) at the time of the defendant's 2000 conviction in Florida, § 14-227a (a) required a blood alcohol content of at least 0.10 percent, but Fla. Stat. Ann. § 316.193 required a blood alcohol content of only 0.08 percent. See General Statutes (Rev. to 2005) § 14-227a (a); General Statutes (Rev. to 1999) § 14-227a (a). Accordingly, the defendant claims that "a conviction under [Fla. Stat. Ann.] § 316.193 . . . does not qualify as 'a prior conviction for the same offense' under § 14-227a (g) (3) . . . and [he] is therefore entitled to be resentenced as a first time offender."

"The issue of whether the elements of the [Florida] and Connecticut statutes under which the defendant was convicted were substantially the same calls for the comparison and interpretation of those statutes, which is a question of law." *State* v. *Commins*, 276 Conn. 503, 513, 886 A.2d 824 (2005), overruled on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014). Therefore, our review is plenary. Id., 510. "When interpreting a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . To do so, we first consult the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citation omitted; internal quotation marks omitted.) *State* v. *Haight*, 279 Conn. 546, 550, 903 A.2d 217 (2006).

A

Before we can compare the statutory language of the relevant Connecticut and Florida statutes, we must determine which revision of our General Statutes is applicable in this case.[6] Since the time of the defendant's conduct in Florida in 1999 and 2005, the essential elements of § 14-227a (a) have been revised in two relevant ways, namely, the legislature eliminated the requirement that the operation of a motor vehicle occur on a "public highway," and the legislature reduced the blood alcohol content level from 0.10 percent to 0.08 percent. See Public Acts 2006, No. 06-147, § 1; Public Acts, Spec. Sess., June, 2002, No. 02-1, § 108.

The defendant argues that the applicable revision of § 14-227a (a) is the revision that was in place before October 1, 2006, "when both of [his] Florida arrests occurred . . . ." He contends that the use of the current statute, rather than the one in existence at the time of his Florida arrests, would amount to an ex post facto application of the current statute. Specifically, he argues: "In order for the state to increase [his] punishment for his 2018 [Connecticut] conviction on the basis of his prior wrongful conduct in Florida, that prior conduct must have been illegal *in Connecticut* at the time it was committed." (Emphasis in original.) The state argues that the applicable revision of § 14-227a is the one that was in effect on the date of the defendant's Connecticut conduct, namely, April 1, 2016. We agree with the state.

Initially, we note that the defendant does not claim that the legislature intended that the revision of § 14-227a in existence at the time of the Florida offenses was to apply to the defendant's sentencing; nor could he, based on the plain language of the statute. The text of § 14-227a (g) provides in relevant part that "[f]or purposes of the imposition of penalties for a second or third and subsequent offense . . . a conviction in any other state of any offense the essential elements of which are determined by the court *to be substantially the same as subdivision (1) or (2) of subsection (a) of this section* . . . shall constitute a prior conviction for the same offense." (Emphasis added.) The legislature clearly has instructed that one must look to the current revision of § 14-227a (a) (1) or (2) to determine if the prior conviction in any other state is substantially the same. Thus, the only question is whether application of the current revision of § 14-227a (g) to the defendant's prior conduct in Florida violates the ex post facto clause.

"The ex post facto clause prohibits, inter alia, the enactment of any law [that] imposes a punishment for an act [that] was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." (Internal quotation marks omitted.)

*State* v. *Hickey*, 80 Conn. App. 589, 593, 836 A.2d 457 (2003), cert. denied, 267 Conn. 917, 841 A.2d 1192 (2004). "Habitual criminal statutes increase the punishment for an offense because of previous convictions for other offenses. In *McDonald* v. *Massachusetts*, [180 U.S. 311, 21 S. Ct. 389, 45 L. Ed. 542 (1901)], the Supreme Court held that the ex post facto law clause did not prevent the imposition of punishment under [a] habitual criminal statute even though the prior offenses had been committed prior to its passage. The [c]ourt explained that the accused was being punished only for the last offense, which occurred subsequent to the enactment of the habitual criminal statute. Similarly, a crime whose definition includes a predicate offense may be applied to an accused who commits the charged offense subsequent to the passage of the statute, even though the predicate offense was committed prior to the passage of the statute. This principle has also been applied to acts, as well as crimes, occurring prior to the passage of the habitual criminal statute. A different result is reached if the habitual criminal statute was enacted subsequent to commission of the offense [that] leads to the charge of habitual criminality.

"The reasoning in *McDonald* is also applicable to cases in which an element of the offense is the previous conviction for the same or different offense. That the prior offense was committed before the enactment of the offense for which the accused is prosecuted does not make the law ex post facto." (Footnotes omitted.) J. Cook, 1 Constitutional Rights of the Accused (3d Ed. December 2020) § 1:20.

In *Hickey*, this court addressed whether an amendment to § 14-227a that extended the " 'look back' " period for enhancing a defendant's sentence due to prior convictions from five years to ten years violated the ex post facto clause. *State* v. *Hickey*, supra, 80 Conn. App. 592–95. The defendant claimed that the court could not use convictions of driving under the influence in 1991 and 1994 to enhance his sentence arising from a conviction for driving under the influence in 2000 because at the time of the earlier convictions the " 'look back' " period for prior convictions was only five years. Id. The defendant claimed that the court's reliance on a 1995 amendment to § 14-227a extending the look back period to ten years violated the ex post facto clause of the United States constitution because it increased his punishment for the earlier offenses. Id., 590–91. In rejecting the defendant's claim, we explained: "The United States Supreme Court has held that a statute enhancing a defendant's sentence because he is a repeat offender does not violate the ex post facto clause even if one of the convictions on which the sentence is based occurred before the enactment passage of the statute. See *Gryger* v. *Burke*, 334 U.S. 728, 732, 68 S. Ct. 1256, 92 L. Ed. 1683 (1948). Moreover, the United States Supreme Court has consistently sustained repeat offender laws

as penalizing only the last offense committed by a defendant. See *Nichols* v. *United States*, 511 U.S. 738, 747, 114 S. Ct. 1921, 128 L. Ed. 2d 745 (1994)." *State* v. *Hickey*, supra, 593.

We also are guided, as we were in *Hickey*, by our Supreme Court's decision in *State* v. *Holloway*, 144 Conn. 295, 300–301, 130 A.2d 562 (1957). In *Holloway*, our Supreme Court rejected the defendant's contention that his enhanced sentence as a third time offender, on the basis of convictions that had occurred in 1947 and 1950, under a statute that had been enacted in 1955, constituted a violation of the ex post facto clause. Id. The court explained: "[T]he crucial fact is that [the 1955 statute] does not undertake to provide punishment for any crime committed prior to the date when it went into effect. The punishment provided is for a violation of the . . . law [that] occurs subsequent to the effective date of the [1955 statute]. The only effect that a conviction antedating the statute has is to enhance the penalty to be imposed for a violation of the . . . [1955] law. The theory of [the 1955 statute] is not that a person shall be punished a second time for an earlier offense but that the principal offense for which the person is being prosecuted under the statute is made more serious by reason of its being a repetition of an earlier offense or earlier offenses." Id., 301. Consequently, this court held in *Holloway*, "in no sense does the [1955] statute operate ex post facto. 16A C.J.S. 161, [Constitutional Law], § 450." *State* v. *Holloway*, supra, 301.

Similarly, in the present case, the court's application of the current revision of § 14-227a to the defendant did not enhance his punishment for his prior Florida convictions. It also did not punish him for conduct that was not criminal in Connecticut at the time he committed the Florida offenses. Instead, the court, in applying the statute as the legislature intended, merely enhanced his sentence for his current illegal conduct because it is considered more serious in light of his earlier offenses in Florida.

On the basis of our clear authority, including the plain and unambiguous language of § 14-227a (g), as well as precedent from this court, our Supreme Court, and the United States Supreme Court, we conclude that the legislature clearly intended that the applicable revision of the General Statutes is the one under which the defendant was charged in this case, namely, the current revision of § 14-227a, and that application of the current revision of the statute does not violate the ex post facto clause.

B

We next set forth the elements of Fla. Stat. Ann. § 316.193 and § 14-227a (a), followed by our consideration of each of the defendant's arguments related to his claim that the Connecticut and Florida statutes are

not substantially the same.

Fla. Stat. Ann. § 316.193 (West Supp. 2020) provides in relevant part: "(1) A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if the person is driving or in actual physical control of a vehicle within this state and: (a) The person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that the person's normal faculties are impaired; (b) The person has a blood-alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood; or (c) The person has a breath-alcohol level of 0.08 or more grams of alcohol per 210 liters of breath. . . ."

Section 14-227a provides in relevant part: "(a) No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight, except that if such person is operating a commercial motor vehicle, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is four-hundredths of one per cent or more of alcohol, by weight, and 'motor vehicle' includes a snow-mobile and all-terrain vehicle, as those terms are defined in section 14-379. . . ."

The defendant argues that the elements of the Florida and Connecticut statutes are not substantially the same, meaning "[they] are not 'the same' in their substance." The state argues that the statutes are substantially the same and that the defendant is comparing the statutes for exactness, rather than for substantial similarity.

"Black's Law Dictionary (6th Ed. 1990) defines 'substantially' as '[e]ssentially; without material qualification; in the main . . . in a substantial manner.' Likewise, 'substantial' is defined as, '[o]f real worth and importance; of considerable value; valuable. Belonging to substance; actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable. . . . Synonymous with material.' . . . Thus, the requirement of a 'substantial' association creates a threshold far below . . . exclusive or complete association . . . ." (Citation omitted.) *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 359, 736 A.2d 824 (1999). We next consider whether certain elements of Fla. Stat. Ann. § 316.193 are substantially the same as the purported corresponding elements of § 14-227a (a).

The defendant argues that the statutes are dissimilar in that § 14-227a (a) requires "opera[tion]" of a motor vehicle, but Fla. Stat. Ann. § 316.193 does not require operation of a motor vehicle; it can be satisfied by proof of "actual physical control . . . ." He contends that being inside of a vehicle with keys in your hand is insufficient to support "operation" of a motor vehicle in Connecticut, but that such conduct is sufficient to support "control" of a vehicle in Florida. Therefore, he argues, "[b]ecause 'operating' a vehicle requires more than being 'in actual physical control of a vehicle,' the essential elements of [§ 14-227a (a)] and [Fla. Stat. Ann. § 316.193] are not substantially the same." The state argues that "the element of 'actual physical control' [in Fla. Stat. Ann. § 316.193] is substantially the same as the element of 'operation' [in § 14-227a]." We agree with the state.

A review of the case law in Florida reveals that "the reasonably capable of being rendered operable standard is applied when a person is charged with driving under the influence and claims . . . that . . . he was not in actual physical control of the vehicle. For example, if a person is found passed out behind the steering wheel of a vehicle with the keys either in the ignition or on the floor of the vehicle, he may be found guilty of violating [Fla. Stat. Ann. § 316.193] because he is in actual physical control of a vehicle which can readily be made operational. See *State, Dept. of Highway Safety & Motor Vehicles* v. *Prue*, 701 So. 2d 637 (Fla. [App.] 1997) (conviction upheld for being in actual physical control while under the influence where a defendant was found passed out in a vehicle on the shoulder of a highway, with her face resting on the steering wheel and the keys either in the ignition or on the floor of the vehicle, because she could have used the keys to start the vehicle and drive away); *Baltrus* v. *State*, 571 So. 2d 75 (Fla. [App.] 1990) (upholding the reversal of a motion to dismiss where the defendant was found passed out and slumped over the steering wheel of his car, with the keys to the car in his hands); *Fieselman* v. *State*, 537 So. 2d 603 (Fla. [App.] 1988) (finding that the trial court erred by dismissing a charge of being in actual physical control of a vehicle while under the influence, where the defendant was found lying down, asleep in the front seat of his automobile, with the engine off but with the keys in the ignition, explaining that the presence of the keys in the ignition led to the inference that the defendant could have started the automobile and have driven away at any time); *Griffin* v. *State*, 457 So. 2d 1070, 1072 (Fla. [App.] 1984) (affirming a conviction based upon actual physical control where the defendant was in the driver's seat of a car that was stationary in the roadway with the keys in the ignition and the lights on, finding that, since the defendant had placed himself

behind the wheel of the vehicle and could have at any time started the automobile and driven away, he was in actual physical control of the vehicle).” (Internal quotation marks omitted.) *Hughes* v. *State*, 943 So. 2d 176, 194–95 (Fla. App. 2006), review denied, 959 So. 2d 716 (Fla. 2007); see *Cloyd* v. *State*, 943 So. 2d 149, 168 (Fla. App. 2006), review denied, 959 So. 2d 715 (Fla. 2007); see also *In re Standard Jury Instructions in Criminal Cases–Report No. 2016-08*, 211 So. 3d 995, 998 app. (Fla. 2017) (jury instruction set forth in appendix provides that “ ‘[a]ctual physical control of a vehicle’ means the defendant must be physically in [or on] the vehicle and have the capability to operate the vehicle, regardless of whether [he] [she] is actually operating the vehicle at the time”).

In Connecticut, the definition of “operating” in § 14-227a (a) has been derived from our case law. Our case law has established that “the term operating encompasses a broader range of conduct than does [the term] driving.” (Internal quotation marks omitted.) *State* v. *Cyr*, 291 Conn. 49, 57, 967 A.2d 32 (2009). “Neither § 14-227a nor any related statute defines operation of a motor vehicle. It is undisputed that the word ‘operating’ as used in [General Statutes] § 14-227b has the same meaning that it does in § 14-227a. The definition was formulated many years ago: Our Supreme Court . . . approved the following jury instruction in *State* v. *Swift*, 125 Conn. 399, 402–403, 6 A.2d 359 (1939): ‘[T]he statute [in question] refers to persons who shall operate a motor vehicle, and is not confined to persons who shall drive a motor vehicle. A person operates a motor vehicle within the meaning of this statute, when in the vehicle he intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle.’

“The definition [later] was refined in [*State* v. *Ducatt*, 22 Conn. App. 88, 90–91, 575 A.2d 708 (1990)] where the defendant was unconscious or sleeping in his parked, running vehicle with his arm wrapped around the steering wheel and his fingers curled around the gear shift lever. ‘[T]he controls of a car capable of immediate powered movement are under the control of an intoxicated motorist, which is precisely the evil the legislature sought to avoid through [§] 14-227a (a). We conclude, therefore, that the statute does not require the state to prove that the defendant intended to move the vehicle in order to prove operation under [§] 14-227a (a).’

“The court [in *Ducatt*] concluded: ‘An accused operates a motor vehicle within the meaning of . . . § 14-227a (a) when, while under the influence of alcohol or any drug and while in the vehicle and in a position to control its movements, he manipulates, for any purpose, the machinery of the motor or any other machinery manipulable from the driver’s position that affects or

could affect the vehicle's movement, whether the accused moves the vehicle or not.' [*State* v. *Ducatt*, supra, 22 Conn. App. 93]." (Footnotes omitted.) S. Tomeo & J. Sills, 21 Connecticut Practice Series: Connecticut [Driving Under the Influence] Law (2020 Ed.) § 8:3, pp. 215–16.

" 'Nothing in our definition of "operation" requires the vehicle to be in motion or its motor to be running.' *State* v. *Haight*, [supra, 279 Conn. 552]. 'It is well settled that operating encompasses a broader range of conduct than does driving. . . . [T]here is no requirement that the fact of operation be established by direct evidence.' . . . *State* v. *Sienkiewicz*, 162 Conn. App. 407, 410, 131 A.3d 1222, cert. denied, 320 Conn. 924, 134 A.3d 621 (2016). 'Operation occurs when a person in the vehicle intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle. . . . This court has clarified the meaning of operation by holding that an intent to drive is not an element of operation. . . . An accused operates a motor vehicle within the meaning of . . . § 14-227a (a) when, while under the influence of alcohol or any drug and while in the vehicle and in a position to control its movements, he manipulates, for any purpose, the machinery of the motor or any other machinery manipulable from the driver's position that affects or could affect the vehicle's movement, whether the accused moves the vehicle or not.' " *State* v. *Smith*, 179 Conn. App. 734, 748–49, 181 A.3d 118, cert. denied, 328 Conn. 927, 182 A.3d 637 (2018).

Statutory prohibitions regarding driving while under the influence "are preventive measure[s] . . . [that] deter individuals who have been drinking intoxicating liquor from getting into their vehicles, except as passengers . . . and which enable the drunken driver to be apprehended before he strikes . . . ." (Internal quotation marks omitted.) *State* v. *Cyr*, supra, 291 Conn. 61; id., 58 (defendant who remotely started vehicle and then sat in driver's seat met definition of "operation" even though he had not put key in ignition and car was not capable of moving without key). "When an obstacle or impediment [to driving the vehicle] is temporary . . . it remains possible that it can be surmounted, and that movement of the vehicle will ensue." Id., 60.

The defendant argues that these definitions show that the two statutes are not substantially the same because in Florida one can be convicted simply because he *was in a position to operate* the machinery of the vehicle, whereas in Connecticut one can be convicted only if he *actually operated* said machinery. We are not persuaded.

First, the defendant's argument requires that the elements of the offenses be identical. That is not the proper test. Second, in examining the manner in which Florida

courts have applied the actual physical control element and the manner in which Connecticut courts have applied the operation element, it is clear that both statutes criminalize substantially the same conduct. As noted previously in this opinion, Florida courts regularly have held that one who is sitting in the driver seat of his vehicle with the keys to the vehicle in his hand, or within reach, is in actual physical control of the vehicle because he is in a position to turn on the ignition immediately and drive the vehicle. At the same time, at least one case in the District Court of Appeal of Florida has held that "sleeping in a prone position in the front seat of a vehicle parked in a parking lot, the engine of which is not running, is not itself sufficient to establish actual physical control of the vehicle" if the key to the vehicle is not in the ignition. *Fieselman* v. *State*, supra, 537 So. 2d 606. The court concluded that such evidence was insufficient for "a legitimate inference to be drawn that [the] defendant had of his own choice placed himself behind the wheel [of the vehicle], and had either started the motor or permitted it to run." (Internal quotation marks omitted.) Id.

Thus, the manner in which Florida courts have interpreted actual physical control is substantially the same as the manner in which our Supreme Court has defined operation—a conviction can be based on the driver sitting in the driver seat and placing the key in the ignition, even though the vehicle is not yet operative, because the driver is in a position to turn on the ignition immediately and drive the vehicle. Both statutes are aimed at preventing the same conduct. As our Supreme Court has noted: "[T]he threat targeted by statutes disallowing not just driving, but also operating a motor vehicle while intoxicated—that is, 'the danger that a parked vehicle will be put in motion by an intoxicated occupant and thereby pose a risk to the safety of the occupant and others'—remains present when the condition rendering the vehicle inoperable is a temporary one that quickly can be remedied. *State* v. *Adams*, 142 Idaho 305, 308, 127 P.3d 208 ( App. 2005), review denied, 2005 Idaho Lexis 206 (June 8, 2005)." *State* v. *Cyr*, supra, 291 Conn. 60. Significantly, our Supreme Court relied on *Adams* even though the statute the court had to apply in that case, like the Florida statute at issue in the present case, criminalized the actual physical control of a vehicle by a person under the influence of drugs or alcohol.

Similarly, in *State* v. *Haight*, supra, 279 Conn. 553–54, our Supreme Court, in comparing our driving under the influence statute with those of other states, treated the operation requirement of § 14-227a as the equivalent of the actual physical control element in other states' statutes. See id., 553 ("[n]umerous courts in other jurisdictions have concluded that a motorist who is found sleeping or unconscious in a stationary vehicle with the motor not running violates the applicable prohibition on operating or being in actual physical control of a

motor vehicle while intoxicated or under the influence of intoxicating liquor or drugs"). Furthermore, our Supreme Court in *Cyr* found that the defendant's conduct met the operation requirement of § 14-227a even though, after the defendant started his vehicle remotely, the key still needed to be inserted into the ignition to make the vehicle operative. *State* v. *Cyr*, supra, 291 Conn. 61. As was the circumstance in the Florida cases we have cited, as well as in the *Adams* case, the focus of our Supreme Court has been on the fact that the defendant was in position to overcome a temporary obstacle to making the vehicle operative by taking an immediate step while he was in the driver's seat behind the steering wheel. See id.

Finally, we note that at least one other state appellate court has considered and rejected an almost identical argument to that made by the defendant in this case. In *State* v. *Slyter*, Docket No. 102,732, 2010 WL 4977154 (Kan. App. November 19, 2010) (unpublished opinion),[7] review denied (Kan. February 15, 2011), the defendant was convicted of operating his bicycle under the influence of drugs or alcohol. His sentence was enhanced due to three prior driving under the influence convictions, including one in Florida. Id., *1. The applicable part of the Kansas statute defined a prior conviction as " 'being convicted of a violation of a law of another state . . . which prohibits the acts that this section prohibits.' " Id. The defendant argued that the Florida conviction was not a prior conviction under the statute because "a person could be convicted under the Florida statute for merely being in 'actual physical control' of a vehicle while intoxicated, while [the Kansas statute] is limited to persons who 'operate or attempt to operate' a vehicle while intoxicated." Id., *2. Comparing a Kansas case, which found that having a key in the ignition and sitting in the driver's seat constituted attempting to operate under Kansas' statute, with the Florida cases cited previously in this opinion, the Court of Appeals of Kansas concluded that the defendant's Florida conviction could be used to enhance his sentence because both statutes criminalized substantially the same acts. Id., *2–4.

For all of the foregoing reasons, we conclude that the "operation" element in § 14-227a (a) is substantially the same as the "actual physical control" element in Fla. Stat. Ann. § 316.193.

### 2

The defendant next argues that the statutes are dissimilar because § 14-227a (a) requires the vehicle to be a "motor vehicle," but Fla. Stat. Ann. § 316.193 does not require the vehicle to be motorized. He contends that "Florida courts have straightforwardly concluded that 'vehicle' includes not just an automobile, but also a bicycle or a nonmotorized boat. See *State* v. *Howard*, 510 So. 2d 612, 612 (Fla. App. 1987) (affirming [driving

under the influence] charge under [Fla. Stat. Ann.] § 316.193 for operation of bicycle while intoxicated, and reasoning that '[t]his section contemplates applicability to all "vehicles" since it is not limited to "motor vehicles," as are many of the other statutes dealing with driving while under the influence'); *State* v. *Davis*, 110 So. 3d 27, 32 n.9 (Fla. App. 2013) (holding that 'boating under the influence' under Florida law applies to operation of nonmotorized vessels, and citing with approval *Howard*'s holding that bicycles qualify as 'vehicles' under [Fla. Stat. Ann.] § 316.193)." The state argues that the definition of "vehicle" in Florida substantially is the same as the definition of "motor vehicle" in Connecticut in that "both statutes cover vehicles used on a highway" regardless of whether they are motorized. We agree with the state.

Pursuant to Fla. Stat. Ann. § 316.003 (75) (West 2005), a vehicle is defined as: "[e]very device, in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks."[8] Florida's driving under the influence statute, Fla. Stat. Ann. § 316.193, applies to nonmotorized vehicles as well as motorized vehicles. See *State* v. *Howard*, supra, 510 So. 2d 612–13.

General Statutes § 14-212 (5) defines "[m]otor vehicle" as "all vehicles used on the public highways . . . ." Section 14-212 further provides that " '[v]ehicle' has the same meaning as 'motor vehicle.' " General Statutes § 14-212 (10).

In *State* v. *Fontaine*, 112 Conn. App. 190, 962 A.2d 197, cert. denied, 290 Conn. 921, 966 A.2d 238 (2009), this court, relying on our Supreme Court's decision in *State* v. *Knybel*, 281 Conn. 707, 916 A.2d 816 (2007), explained that the statutory definition contained in § 14-212 (5) is much broader than that contained in General Statutes § 14-1.[9] "[T]he definition of 'motor vehicle' in chapter 248, when read in the context of the General Statutes as a whole, not only suggests a broad definition of the term 'motor vehicle' for purposes of chapter 248 but also that all 'vehicles' in the various chapters of the General Statutes are included within that term. . . . Whether a vehicle is wholly self-propelled does not change whether it is a 'vehicle,' and thus a 'motor vehicle,' for the purposes of chapter 248; per § 14-212 (5), any vehicle that is driven on the public highways is a 'motor vehicle' under chapter 248." (Citations omitted.) *State* v. *Fontaine*, supra, 112 Conn. App. 201. As we noted in *Fontaine*, § 14-227a, under which the defendant in the present case was charged, is included in chapter 248 of our General Statutes.

Employing the broad definition set forth in § 14-212 (5), we conclude that neither § 14-227a (a) nor Fla. Stat. Ann. § 316.193 requires the vehicle to be motorized. Accordingly, these statutes are substantially the same in their definitions of "vehicle" and "motor vehicle" for

purposes of Fla. Stat. Ann. § 316.193 and § 14-227a (a).

4

The defendant next argues that the statutes are dissimilar because, at the time of his June 23, 1999, and May 16, 2005 "wrongful conduct" in Florida, which resulted in convictions in Florida on March 14, 2000, and October 25, 2006, § 14-227a (a) required operation in specified proscribed areas, but Fla. Stat. Ann. § 316.193 did not proscribe specific areas. More specifically, the defendant argues that, "[i]n order for the state to increase [his] punishment for his 2018 conviction on the basis of his prior wrongful conduct in Florida, that prior conduct must have been illegal in Connecticut at the time it was committed. . . . To establish a violation of § 14-227a before 2006, the state had to prove that the defendant's operation of a motor vehicle under the influence occurred 'on a public highway' or another similar road." Under Florida law, he argues, there was no such requirement that his conduct occur on a public highway or another similar road. The defendant's argument is without merit because it rests on a flawed premise.

As we explained in part I A of this opinion, § 14-227a (g) directs a comparison of the prior conviction with the current revision of § 14-227a (a) (1) or (2). Furthermore, a conviction under a new or revised statute does not result in a second punishment merely because an enhancement is applied that was based on a prior conviction. See *State* v. *Hickey*, supra, 80 Conn. App. 589. "The United States Supreme Court has held that a statute enhancing a defendant's sentence because he is a repeat offender does not violate the ex post facto clause even if one of the convictions on which the sentence is based occurred before the enactment passage of the statute. See *Gryger* v. *Burke*, [supra, 334 U.S. 732]." *State* v. *Hickey*, supra, 593. Repeat offender laws penalize only the *last offense* committed by a defendant. Id.; see *Nichols* v. *United States*, supra, 511 U.S. 747; see also *State* v. *Holloway*, supra, 144 Conn. 300–301.

Pursuant to the revision of § 14-227a (a), under which the defendant was charged for his April 1, 2016 conduct, there was no requirement that he operate his vehicle on a public highway or another similar road. The public highway element of § 14-227a was eliminated by the legislature in 2006. See Public Acts 2006, No. 06-147, § 1. Accordingly, the defendant's claim has no merit.

4

The defendant next argues that the statutes are dissimilar because, at the time of his 2000 conviction in Florida, § 14-227a (a) required a blood alcohol content of at least 0.10 percent, but Fla. Stat. Ann. § 316.193 required a blood alcohol content of only 0.08 percent. For the reasons previously stated, the premise of this claim also is flawed. See parts I A and I B 3 of this

opinion.

An enhancement penalty for a repeat offender penalizes only the *last offense* committed by a defendant. See *Nichols* v. *United States*, supra, 511 U.S. 747; *State* v. *Hickey*, supra, 80 Conn. App. 593; see also *State* v. *Holloway*, supra, 144 Conn. 300–301. When the defendant was charged in the present case for his Connecticut conduct, § 14-227a (a) applied to a blood alcohol content of 0.08 percent or greater. The 0.10 percent element of § 14-227a was lowered to 0.08 percent by the legislature in 2002. See Public Acts, Spec. Sess., June, 2002, No. 02-1, § 108. Accordingly, this claim is without merit.

## II

The defendant next claims that *State* v. *Burns*, supra, 236 Conn. 18, and *State* v. *Mattioli*, supra, 210 Conn. 573, should be overruled because the plain language of § 14-227a (g) requires that *all* of the defendant's previous convictions on which the enhanced penalty relies occur within ten years of the current Connecticut *conviction*. In *Burns*, our Supreme Court held that the prior convictions just had to be within five[10] years of the defendant's *conduct* that resulted in the conviction on which his sentence was enhanced. *State* v. *Burns*, supra, 236 Conn. 26. In *Mattioli*, the Supreme Court held that only the defendant's *last* conviction before the conviction at issue had to have occurred within the statutory look back period. *State* v. *Mattioli*, supra, 210 Conn. 576.

"[A]s an intermediate court of appeal, we are unable to overrule, reevaluate, or reexamine controlling precedent of our Supreme Court. . . . As our Supreme Court has stated: [O]nce this court has finally determined an issue, for a lower court to reanalyze and revisit that issue is an improper and fruitless endeavor." (Internal quotation marks omitted.) *State* v. *Edwards*, 202 Conn. App. 384, 410,      A.3d    , cert. denied, 336 Conn. 920,      A.3d.      (2021).

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The defendant waived his right to a jury trial as to the part B information under which he also was charged, and the court enhanced the defendant's sentence as a third time offender on the basis of two prior convictions in the state of Florida.

[2] Although § 14-227a has been amended by the legislature since the events underlying the present case; see Public Acts 2016, No. 16-126, § 4; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

In his appellate brief, the defendant recognizes that we are "foreclosed by controlling authority." See *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010) ("it is manifest to our hierarchical judicial system that [the Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court . . . [is] bound by [its] precedent"); *State* v. *Smith*, 107 Conn. App. 666, 684, 946 A.2d 319 ("[w]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them") (internal quotation marks omitted)), cert. denied, 288 Conn. 902, 952 A.2d 811 (2008). He raises his second claim only to preserve it for review by our

Supreme Court. See part II of this opinion.

[3] General Statutes § 14-227a (g) provides in relevant part: "For purposes of the imposition of penalties for a second or third and subsequent offense . . . a conviction in any other state of any offense the essential elements of which are determined by the court to be substantially the same as subdivision (1) or (2) of subsection (a) of this section . . . shall constitute a prior conviction for the same offense."

[4] The defendant also filed a motion for a judgment of acquittal.

[5] The defendant and the state agree that Fla. Stat. Ann. § 316.193 has not undergone any significant changes since the time of the defendant's convictions. Accordingly, we employ the current revision of that statute.

[6] See footnote 5 of this opinion.

[7] The decision in *Slyter* was an unpublished disposition. "Pursuant to Kansas Supreme Court Rule 7.04 (f), unpublished opinions are not precedential and are not favored for citation. They may be cited for persuasive authority on a material issue not addressed by a published Kansas appellate court opinion." *State* v. *Slyter*, supra, 2010 WL 4977154, *1. Because we were unable to locate any published opinions of a Kansas appellate court on this issue, we cite *Slyter* as persuasive authority.

[8] The definition of "vehicle," pursuant to Fla. Stat. Ann. § 316.003, has been revised slightly. The revised definition is: "Every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except personal delivery devices, mobile carriers, and devices used exclusively upon stationary rails or tracks." Fla. Stat. Ann. § 316.003 (103) (West Supp. 2020).

[9] Relying on this court's decision in *State* v. *Young*, 186 Conn. App. 770, 794, 201 A.3d 439, cert. denied, 330 Conn. 972, 200 A.3d 1151 (2019), the defendant argues in his principal brief that the statutory definition of "motor vehicle" found in § 14-1 is applicable in this case. In his reply brief, the defendant concedes that § 14-212 is, in fact, the applicable statutory section in this case. In *Young*, this court was not asked to decide whether the definition in § 14-212 or that in § 14-1 was applicable. Consequently, we attach no significance to the fact that the court referred only to § 14-1. See id. Instead, we agree with the parties that the definition of motor vehicle in § 14-212 controls the resolution of the defendant's claim.

[10] When *Burns* was decided, the statutory look back period was only five years. The defendant does not dispute that the holding in *Burns* applies to the current ten year look back period, and this court has so held. See *State* v. *Tenay*, 156 Conn. App. 792, 799, n.5, 114 A.3d 931 (2015).

—————————————